IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. ) ID No. 1309018141
)
SHAKITA DOLLARD, )
)
Defendant. )
)

## **ORDER**

Defendant was found guilty of felony theft by a jury. She was sentenced to two years at Level 5 suspended immediately for one year at Level 2 probation. Now before the court is her timely renewed motion for judgment of acquittal. This is the court's order resolving that motion.

1. The Supreme Court recently had occasion in *Lum v. State*[1] to remind trial judges that they may not defer ruling on motions for judgment of acquittal made at the close of the State's case (as opposed to motions made at the close of the evidence). This is of considerable significance since courts are limited to consideration of only the evidence in State's case-in-chief when the motion is made at the close of the State's case. When the motion is made at the close of all the evidence

---

[1] 2014 WL 4667089 (Del. Sep. 19, 2014).

the trial court is free to consider all of the evidence, including any offered by the defendant, when ruling on the motion.

2. In this case it is unclear whether Defendant's motion was made at the close of the State's case or at the close of all of the evidence. In *Lum* the Supreme Court held that a trial judge's deferral of a ruling on a motion for judgment of acquittal is harmless error if, upon further review, the evidence offered during the State's case-in-chief justified denial of that motion. According to the *Lum* court, "[b]ecause the evidence presented in the State's case-in-chief was clearly sufficient to sustain his conviction without reference to the additional evidence of Lum's knowledge that came in during his own case . . . the Superior Court's failure to rule on the motion at the end of the State's case-in-chief and before the defense case commenced was harmless."[2] In light of the current uncertainty concerning the timing of Defendant's motion at trial, the court will err on the side of caution and will assume that it was made at the close of the State's case. It will therefore only consider the evidence offered during that case-in-chief.[3]

---

[2] *Id.* at *2.

[3] Defendant testified during her case-in-chief and provided additional evidence tending to incriminate her. She testified a third person who worked for her insurance carrier agreed to be a straw man who paid her premiums so that she could get that third-person's employee discount. According to Defendant she delivered cash every month to this third person (whose last name she did not know) and that individual would, in turn, pay Defendant's premium. She offered no explanation (1) how she could be the named insured on a policy when she was getting an employee discount by using the third person's name, and (2) why it was necessary for her to have an automatic deduction of her premium from her ostensible checking account when the third person was purportedly paying her premium. If the court were to consider this evidence it would conclude that it would also allow a reasonable trier of fact to find Defendant guilty.

2. The standard for granting a judgment of acquittal is a familiar one: "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime."[4]

3. In this case Defendant is charged with having her automobile insurance carrier electronically deduct her monthly premium payment from the victim's account. The Defendant and the victim were not acquainted, and the victim testified he never authorized payment of Defendant's insurance premiums from his account.

4. In her motion Defendant contends that there was no evidence that Defendant provided her insurance carrier with the victim's bank routing number and account.

5. During its case-in-chief the State played for the jury an audio recording of a telephone conversation between Defendant and an employee of her insurance carrier. During that telephone conversation Defendant told the insurance employee that she wished to re-start automatic deductions of her insurance premiums from her checking account. The employee asked Defendant for her bank routing number and checking account number, whereupon Defendant replied she did not remember them. The insurance carrier's employee then read the routing number and account number it had on file, which were the numbers associated with the victim's account. After hearing that information

---

[4]   *Cline v. State,* 720 A.2d 891, 892 (Del. 1998)(per curiam).

Defendant authorized the insurance carrier to deduct the premiums from that account.

6. When viewed in the light most favorable to the State a rational jury could conclude that Defendant authorized the insurance company to deduct her premium payments from that account knowing the account was not hers.

For the foregoing reasons, the motion for judgment of acquittal is **DENIED.**

October 24, 2014

John A. Parkins, Jr.
Superior Court Judge

oc: Prothonotary

cc: Nicholas R. Wynn, Esquire, Department of Justice,
Wilmington, Delaware – Attorney for the State
T. Andrew Rosen, Esquire, Office of the Public Defender,
Wilmington, Delaware – Attorney for the Defendant